

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 25, 2019

**BY ECF AND EMAIL**

The Honorable Richard J. Sullivan
United States Circuit Judge
United States Court of Appeals for the Second Circuit
40 Foley Square
New York, New York 10007

   Re: ***United States v. Daniel Sherlock*, 17 Cr. 597 (RJS)**

Dear Judge Sullivan:

   The defendant Daniel Sherlock ("Sherlock" or "the defendant") in the above-captioned case is scheduled to be sentenced on March 13, 2019, at 3:00 p.m.  The Government respectfully submits this letter in connection with sentencing and in response to the defendant's submission, dated February 19, 2019.  The defendant pleaded guilty pursuant to a *Pimentel* letter, which calculated the applicable United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") range as 63 to 78 months' imprisonment (the "Guidelines Range").  The United States Probation Office (the "Probation Office") agrees with the Guidelines Range calculation but recommends a variance of 36 months' imprisonment.  For the reasons set forth below, the Government submits that a sentence within the Guidelines Range is appropriate in this case.

**I.   Offense Conduct**

   Beginning in June 2016, the defendant was employed by New York City Health and Hospitals Corporation in the Management Information Systems department.  (Presentence Investigation Report, dated January 8, 2019 ("PSR"), ¶¶ 11, 16.)  In June 2017, law enforcement agents searched the defendant's work computer and recovered 86 images of child pornography.  (PSR ¶ 25.)  Seventy-five of the images were recovered from the computer's thumb cache,[1] and the remaining eleven images were recovered from the recycle bin located inside a folder titled "Evelyn."  (PSR ¶¶ 19-20.)  Five of the images in the folder depict a prepubescent female holding an adult male's penis in her hand, touching the penis with her tongue, and inserting an adult male's penis into her mouth.  (PSR ¶ 20.)  The remaining six images demonstrate an adult

---

[1] Forty of these images were identified as images from the "Tweety Series," meaning the images are certified by the National Center for Missing and Exploited Children ("NCMEC") as real images of an underage person.

male's penis touching a prepubescent female's bare chest with ejaculate displayed on her chest. (PSR ¶ 20.)

Law enforcement also recovered from the computer evidence of "CCleaner," a program designed to clean the computer registry and clean traces of online activities, along with three word documents that appear to have been written by the defendant.  (PSR ¶¶ 21, 26.)  In one document titled "Daily Routine," the defendant writes "I understand if you don't want to read this apology, but I need to write and let you know how ashamed I am for looking at your abuse online."  (PSR ¶ 27.)  In another document titled "Victim," the defendant writes "I imagined this was a daily panic attack on who was going to hurt you again, times where you couldn't even function….I assure you did nothing wrong, this is not your fault.  In no way I asking you to forgive me, but [sic] live your life the best way that can."  (PSR ¶ 28.)

## II.    Procedural History

The defendant was charged by complaint on August 2, 2017, with one count of possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B), (b)(2), and 2.  On September 28, 2017, the grand jury returned an Indictment on the same charge.  On October 17, 2018, the defendant pleaded guilty to the Indictment, pursuant to a *Pimentel* letter, which calculated a Guidelines Range of 63 to 78 months' imprisonment. (PSR ¶¶ 4-6.)

On January 2, 2018, the Probation Office issued the final PSR.  The PSR calculates the Guidelines Range in the same manner as the *Pimentel* letter.  Specifically, the PSR calculates a base offense level of 18, pursuant to U.S.S.G. § 2G2.2(b)(1), and then adds enhancements because:  (i) the material involved a prepubescent minor, pursuant to U.S.S.G. § 2G2.2(b)(2); (ii) the material portrayed sadistic or masochistic conduct, pursuant to USSG § 2G2.2(b)(4);[2] (iii) the offense involved the use of a computer for the possession, transmission, receipt, or distribution of the material, pursuant to USSG § 2G2.2(b)(6); and (iv) the offense involved at least ten images but fewer than 150 images, pursuant to U.S.S.G. § 2G2.2(b)(7)(A), resulting in an adjusted offense level of 28.  The adjusted offense level is then decreased by two levels because the defendant accepted responsibility for the offense, and an additional one level because the defendant timely notified authorities of his intention to enter a plea of guilty, resulting in a total offense level of 25.  (PSR ¶¶ 40-53.)

---

[2]    *See United States v. Freeman*, 578 F.3d 142, 147 (2d Cir. 2009) (holding that a "sentencing court need find only that (1) an image depicts sexual activity involving a minor and (2) the depicted activity would have to cause the minor pain in order to establish a sufficient factual basis for the imposition of the enhancement").  In this case, the Government submits, consistent with the *Freeman* decision, that the images depicting a prepubescent female inserting an adult male's penis into her mouth would have caused emotional and physical pain to the minor, and therefore the enhancement under Section 2G2.2(b)(4) applies.

The PSR further calculates that the defendant has three criminal history points, and is in Criminal History Category II, because of a 2015 conviction for obscenity in the third degree, for which he received a three-year term of probation, and because the defendant was on probation at the time of the instant offense.  (PSR ¶¶ 55-58.)  With an offense level of 25 and Criminal History Category of II, the Probation Office calculates a Guidelines Range of 63 to 78 months' imprisonment but recommends a below-Guidelines sentence of 36 months' imprisonment, followed by five years' supervised release.[3]  (PSR at 23.)

On February 19, 2019, the defendant submitted a sentencing memorandum and accompanying exhibits, and requested a non-custodial sentence.  The defendant argues that the Guidelines for child pornography possession cases are unreasonably high and overstate his culpability in this case, and that a sentence of probation with a period of home incarceration, would be sufficient because the defendant is at heightened risk of victimization in prison and because prison would impede the defendant's progress within his current mental health treatment.  The defendant also cites to several cases from this District in which courts have imposed non-custodial sentences in other child pornography cases.

### III.   Discussion

#### A.  Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. 220, 264 (2005).  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)   to afford adequate deterrence to criminal conduct;
> (C)   to protect the public from further crimes of the defendant; and

---

[3]   The Government agrees that a term of supervised release of at least five years is required by statute.  *See* 18 U.S.C. § 3583(k).

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.  A Sentence Within the Guidelines Range Is Appropriate In This Case

In this case, the Government believes a sentence within the Guidelines Range of 63 to 78 months' imprisonment would achieve the goals of sentencing and appropriately balance the factors considered pursuant to Section 3553(a).

First, the offense to which the defendant pleaded guilty is serious.  As the Second Circuit has noted,

> there can be no question that the dissemination of child pornography is a serious crime that causes real injury to particularly vulnerable victims.  As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children.  Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is the exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse.

*United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013); *see also New York v. Ferber*, 458 U.S. 747, 757-59 & nn. 9-10 (1982) (citing congressional and scholarly reports, and court cases). It is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet."  *United States v. Williams*, 553 U.S. 285, 307 (2008).  "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," *Ferber*, 458 U.S. at 757, and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, *see Osborne v. Ohio*, 495 U.S. 103, 110 (1990).

The Supreme Court recognized in *Paroline* that a child pornography victim "suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline v. United States*, 134 S.Ct. 1710, 1726 (2014) (also finding that harm to a child pornography victim is caused by "the trade in her images," and that a defendant who possessed such images "is a part of that cause, for he is one of those who viewed her images.").  "Harms of this sort are a major reason why child pornography is outlawed," and "[t]he unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy."  *Id.*

Second, a Guidelines sentence is necessary to deter the defendant from future conduct. This is the defendant's second offense for the possession of child pornography.  In 2014, the defendant was arrested for possessing images and videos of young females masturbating and

performing and receiving oral sex from an adult male.  (PSR ¶ 55.)  For this conduct, the
defendant received a term of three years' probation.  While on probation, the defendant engaged
in the instant conduct.  Accordingly, another probationary sentence would serve little purpose.
In addition, unlike in many child pornography cases, there is no psychosexual evaluation to
consider in this case.  The PSR indicates that "the defendant declined to participate in said
evaluation."  (PSR ¶ 81.)  This absence makes it very difficult for the Government to evaluate
the defendant, his likelihood of recidivism, and the extent to which his current treatment plan is
working.

### C.  The Defendant's Arguments For a Probationary Sentence Are Not Persuasive

The defendant's request for a probationary term, in lieu of any incarceratory sentence,
should not be granted. An incarceratory sentence is necessary to reflect the seriousness of the
offense, to further promote respect for the laws that seek to eradicate the spread of child
pornography, and to ensure deterrence as to this defendant and to the public at large.

First, relying on the Second Circuit's decision in *United States v. Dorvee*, 616 F.3d 174,
182 (2d Cir. 2010) and *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017), the defendant
asserts that the Guidelines under "Section 2G2.2 do not merit deference and should not be
followed."  (Def. Mem. 5.)  To be sure, the Second Circuit has acknowledged that the pertinent
Guideline "is fundamentally different from most," because the offense level and enhancements
have been increased at the instruction of Congress.  *Dorvee*, 616 F.3d at 184.  The Second
Circuit has accordingly explained that the Guideline must be "applied with great care" to avoid
"unreasonable sentences." *Id.*  Such care is necessary because the enhancements apply with such
frequency that they "routinely result in Guidelines projections near or exceeding the statutory
maximum, even in run-of-the-mill cases." *Id.* at 186. (Here, the defendant's Guidelines Range is
well below the statutory maximum.)

Nevertheless, the message of *Dorvee* and *Jenkins* is not, as the defendant suggests, that
the factors that warrant Guidelines enhancements—many of which apply to the facts of this
case—should be viewed with significantly less consideration by this Court in its fashioning an
appropriate sentence.  Rather, the Second Circuit has instructed that these Guidelines
enhancements—and indeed, the facts that trigger them— should be carefully considered, bearing
in mind the frequency with which enhancements apply.

These cases do not hold, however, that Guidelines sentences are never appropriate.
Indeed, the Second Circuit has affirmed multiple Guidelines sentences since *Dorvee* based on
case-specific considerations, including in cases, like this one, that did not involve contact with a
child.  *United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming 120-month
sentence for possession of child pornography, where there was no evidence that the defendant
had had inappropriate contact with a child or had distributed child pornography); *United States v.
Magner*, 455 F. App'x 131, 134-35 (2d Cir. 2012) (affirming 108-month sentence in similar
circumstances); *United States v. Aumais*, 656 F.3d 147, 157 (2d Cir. 2011) (affirming 121-month
sentence for possessing and transporting child pornography given, among other things, "the
violent nature of the images" and "the number of them").

Rev. 07.20.2016

Second, defendant's submission emphasizes the defendant's background, including the challenging circumstances of his upbringing, his developmental delays, both intellectual and emotional, his depression, and the fact that he is currently in treatment, which would be "sabotaged" by a term of imprisonment. (Def. Mem. 10.) The Government is sympathetic to these arguments. However, the record before the court suggests that anything short of an incarceratory term would be insufficient. This is especially true where, as here, the Government does not have a psychosexual evaluation to consider.

Third, the defendant asserts that an incarceratory sentence would create unwarranted sentencing disparities between the defendant and other offenders with similar levels of mitigating factors. In support of this assertion, the defendant makes reference to a handful of cases in this district that led to no incarceratory period. These cases certainly constitute outliers for sentences imposed for child pornography offenses, but, for the most part, involve facts that are not present in this case.

For example, in nearly all of the cases cited, the defendant was a first-time offender whose conduct was truly aberrational. *See, e.g.*, *United States v. Sauer*, 16 Cr. 565 (CS) (2017) (defendant primarily collected adult pornography but happened to view a small number of images involving child pornography); *United States v. Angelo Trinidad*, 14 Cr. 537 (NRB) (2015) ("no indication [the defendant] engage[d] in the charged conduct for more than about a month before his arrest" and otherwise was a "honorably discharged veteran, a person with a responsible and caring job, a devoted father, brother and son and active member of his church who has the full support of his brother, sister-in-law and pastor"); *United States v. Scott Meyer*, 14 Cr. 183 (JGK) (2016) (first-time offender); *United States v. Pinero*, 14 Cr. 341 (AJN) (no criminal history). The same cannot be said for the defendant – a recidivist, who received a probationary sentence and continued to engage in this serious conduct.[4]

In sum, the Government recognizes that the defendant has mental health issues, that he is currently receiving treatment, and that a term of imprisonment may interfere with that treatment. However, it remains that the defendant is a two-time offender. He was previously given a probationary sentence but continued to engage in the same offense conduct. Instead of committing to treatment, he resorted to viewing child pornography on his work computer – something he knew he was not allowed to do. Ultimately, without a psychosexual evaluation to give comfort that the defendant is unlikely to offend again or engage in more serious conduct, the Government believes that a sentence within the Guidelines Range is appropriate.

---

[4]   Other cases cited involve defendants with extreme physical health impairments, *see United States v. Roland Gabriel*, 16 Cr. 765 (KBF) (2017) (conduct was aberrational and defendant had a heart condition; court concluded "I am not prepared to put you in jail and think that that is going to be what kills you because you don't get appropriate medical treatment"); *United States v. Christopher Ressa*, 11 Cr. 939 (RPP) (2013)(defendant was elderly with no prior criminal history), or other unique factors weighing against incarceration, *see United States v. Ivan Rivera Gallegos*, 14 Cr. 432 (JPO) (2017) (defendant spent 2.5 years on home confinement prior to sentencing).

Page 7

**IV.     Conclusion**

  For the reasons set forth above, the Government respectfully submits that a sentence within the Guidelines Range would be fair and appropriate in this case.

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney

By:                  

        Alexandra N. Rothman
        Louis A. Pellegrino
        Assistant United States Attorneys
        (212) 637-2580/2617

cc:  Sabrina P. Shroff, Esq. (by ECF)

Rev. 07.20.2016