UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

DANIEL SHERLOCK,

Defendant.

No. 17-cr-597 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

On October 17, 2018, Defendant Daniel Sherlock pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2. (*See* Doc. No. 9; *see also* Doc. No. 65 at 47.) On September 6, 2019, the Court sentenced Sherlock to eighteen months' imprisonment, followed by a five-year term of supervised release. (*See* Doc. No. 102.) Given the nature of Sherlock's crime, the Court also imposed a mandatory $5,000 special assessment pursuant to the Justice for Victims of Trafficking Act of 2015 ("JVTA"). (*Id.* at 6.) Sherlock appealed, arguing that the Court imposed the $5,000 special assessment without first making a finding that he was not indigent – something that neither party objected to or requested at the time of sentencing. (*See* Doc. No. 107; *see also* Doc. No. 104 at 51.) On appeal, the government moved, with Sherlock's consent, to have the case remanded so that the Court could clarify its basis for imposing the special assessment and supplement the record with respect to Sherlock's indigency. (*See* Doc. No. 107.) The Second Circuit granted the government's motion and remanded the case, directing this Court to "make specific findings regarding [Sherlock's] indigence" and to "conduct such additional proceedings as . . . appropriate in aid of making such a determination." (*Id.* at 1.) The Second Circuit further advised that, in the event Sherlock was found to be indigent, the Court should "vacate the judgment only insofar as it contains the $5,000 special assessment[] and . . . enter an amended judgment that does not include the special assessment." (*Id.*)

On remand, the Court received various submissions from the parties regarding Sherlock's indigency, which included information regarding his finances, assets, housing situation, disability status, employment prospects, and ability to work. (*See, e.g.*, Doc. Nos. 110–12, 126–27, 149, 158, 169, 171.)[1] Having reviewed the information contained in these submissions, the Court is satisfied that it has sufficient information to make a determination regarding Sherlock's indigency and that further proceedings are not necessary.

The JVTA provides that courts "shall assess an amount of $5,000 on any non-indigent person or entity" convicted of certain enumerated offenses. 18 U.S.C. § 3014(a). In determining whether a defendant is "non-indigent" under the JVTA, "a court may consider both the resources available to the defendant at the time of sentencing and the defendant's future earning potential." *United States v. Rosario*, 7 F.4th 65, 70 (2d Cir. 2021). Accordingly, a district court may consider the defendant's health, financial resources, debts, court-imposed financial obligations, education, work history, vocational skills, language proficiency, and participation in training programs in making this determination. *See id.* at 72. Notably, because the JVTA includes sex crimes against minors among its enumerated offenses, a defendant "cannot use his sex-offender status to shield him from paying the assessment" merely by claiming that his status will make it more difficult to find future employment. *Id.* at 73 (internal quotation marks omitted). Nor can a defendant claim that he is indigent solely because he has existing debts or court-imposed financial obligations. *See id.* For a defendant to be considered indigent, the facts must demonstrate that he "lacks the capacity to earn subsistence" and the "means to provide for himself" such that he will "always be impoverished." *Id.* at 70 (internal quotation marks and emphasis omitted).

---

[1] The Court has also considered submissions filed under seal, including the government's January 12, 2023 letter and corresponding exhibit; Sherlock's January 20, 2023 letter and corresponding exhibits; and the records appended to the government's September 20, 2023 letter (*see* Doc. No. 166). The Court has also drawn on information contained in the Probation Department's October 20, 2023 request for a modification of the terms of Sherlock's supervised release, which was also submitted under seal.

Here, the Court is persuaded that Sherlock is indigent for the purposes of the JVTA.[2]  The record reflects that – even prior to his conviction for the instant offense – Sherlock had no assets, struggled to maintain consistent employment (at least in part) due to his several diagnosed mental health conditions and documented cognitive limitations (including Pervasive Developmental Disorder, a form of autism), and earned minimal income such that he was not able to live independently.  (*See, e.g.*, PSR ¶¶ 71, 75–91, 99–108; *see also* Doc. Nos. 110, 112.)  Although the government makes much of the fact that Sherlock earned an annual salary of $61,800 while employed as an information technology ("IT") consultant during the period from June 13, 2016 to August 2, 2017 (*see* Doc. No. 111 at 4; *see also* PSR ¶ 100), he was terminated from that position for the misconduct underlying his criminal offense.  It is therefore doubtful that Sherlock could obtain or maintain a job in that field in the future.  (PSR ¶ 91 (noting that "if Sherlock were to obtain employment and [be] allowed to access the Internet, his employer should be notified of his sex offense and related risk factors").)

Prior to the IT job, Sherlock never worked for more than a year in any position, including as a stock clerk at a supermarket and as a cashier at a video store, prompting his job coach to conclude he is "unable to sustain his employment without ongoing intervention and job supports." (PSR ¶ 99–105.)  The record further reflects that, although Sherlock has been actively seeking employment throughout his current term of supervised release and, according to Probation, is receiving assistance from vocational counselors, he remains unemployed.  (*See* Doc. No. 169.) Therefore, while it is undisputed that Sherlock has held jobs in the past and may be able "to work part-time in some capacity" in the future (Doc. No. 149 at 2), the record confirms that – given Sherlock's mental health issues and cognitive limitations – it is unlikely that the earnings from any

---

[2] The Second Circuit has yet to resolve which party bears the burden of proof as to a defendant's indigency.  But even assuming that the defendant bears the burden of proving he is indigent, the Court finds that that burden has been met for the reasons discussed below.

job he would be able to secure would cover the costs of his basic necessities. (*See* Cohen Report at 10.)

The record further reflects that Sherlock is unable to live independently. For most of his life, he has resided with his mother. But as noted in defense counsel's sentencing submission in 2019, even then Sherlock's mental incapacities prevented him from maintaining a simple checking account and paying his bills without assistance. (Doc. No. 74 at 3.) Between May 30, 2018 and his sentencing in 2019, Sherlock resided at "Pilgrim SOCR, a facility for individuals with significant mental illness, located in Brentwood, New York." (PSR ¶ 9; *see* Doc. No. 76 at 24.) Following his release from prison in 2021, Sherlock had a psychotic breakdown that resulted in his hospitalization at Nassau University Medical Center and his eventual involuntary commitment to the Pilgrim State Psychiatric Center in Long Island. (Doc. No. 133.) In April 2022, he was transferred to the Crisis Residence, a state-sponsored community residence affiliated with Pilgrim State, (Doc. No. 146 at 23), and was eventually referred to a subsidized group-living program called, "Mental Health Housing," where he remains to this day, (Doc. No. 171.) According to Probation, he currently receives therapy from First Light Psychological Services, a state-sponsored treatment program, and there are no specific plans for him to leave Mental Health Housing.

As noted in the government's October 23, 2023 letter, the United States Social Security Administration ("SSA") determined that Sherlock was disabled based on his "depressive," "bipolar," and "impulse control" disorders and found him to be eligible to receive supplemental security income ("SSI") benefits dating back to May 2022.[3] (Doc. No. 169 at 1.) Defense counsel estimates that he will receive approximately $900 per month in such benefits, thirty percent of

---

[3] The government argues that, because the SSA determined that Sherlock was entitled to $841 per month in back payments for the period from May 2022 to December 2022, Sherlock can use the $6,728 total back payment to satisfy his JVTA assessment. (*See* Doc. No. 169 at 1.) But given that Sherlock was without income during this period, the Court is persuaded that these back payments will be necessary to cover Sherlock's existing debts. (*See* PSR ¶ 106 (indicating that Sherlock's then-existing credit card debts resulted in a negative net worth of $8,543.09); *see also* Def. Ltr. dated Jan. 20, 2023 (representing that it would be "all but impossible" for Sherlock "to pay off his current substantial (and increasing) debt").)

which will be used to pay rent at the subsidized housing unit where he currently resides. (Doc. No. 171.) In the Court's view, this monthly SSI payment confirms rather than contradicts Sherlock's indigency, and, as noted above, there is nothing in the record to suggest that Sherlock's financial prospects will improve in the future.

In light of the foregoing, the Court finds that Sherlock is indigent and therefore not subject to the $5,000 special assessment required by 18 U.S.C. § 3014(a). Accordingly, IT IS HEREBY ORDERED THAT the judgment in this case, Doc. No. 102, is VACATED insofar as it orders Sherlock to pay the JVTA special assessment. The Court shall issue an amended judgment that does not include the $5,000 JVTA special assessment forthwith. The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 171.

SO ORDERED.

Dated:   August 19, 2024
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation